[No. 64410-1. En Banc.]

Argued May 14, 1997. Decided January 29, 1998.

*In the Matter of the Marriage of* PEGGY JO BRISCOE, *Respondent,* and DEWAYNE L. BRISCOE, *Petitioner.*

*Edwards, Sieh, Hathaway, Smith & Goodfriend, P.S.*, by *Catherine Wright Smith*, for petitioner.

*Casey & Pruzan*, by *Martin A. Godsil*, for respondent.

SANDERS, J. — We reverse a Court of Appeals' decision which denied the legal right of a father to offset social security disability payments against child support obligations pursuant to RCW 26.18.190(2) (1994).

### Facts

Peggy and Dr. Dewayne Briscoe married in 1986. Twin children were born of the marriage the following year. In 1990 Dewayne injured his back and hands in a car accident and as a result discontinued his practice as an oral surgeon. Thereafter, each of his two children received $191 monthly federal social security disability benefits on his behalf.

In 1992 Peggy and Dewayne separated. Peggy instituted divorce proceedings. Dewayne and Peggy divided their property with Peggy receiving some $1.5 million in assets including their lakefront family home. Dewayne received assets valued at $1.8 million. Peggy was awarded custody of both children.

Dewayne agreed to pay $1,700 per month total child support to "facilitate settlement," an amount which exceeded the $1,160 per month Dewayne would have been obligated to pay had the obligation been calculated according to the "Washington State Child Support Schedule," without reference to the disability income. In early 1994 a decree of dissolution was entered finalizing the dissolution and incorporating the $1,700 per month child support obligation.

A few months later Dewayne asserted the right to offset the social security disability benefits paid to his children against his child support obligation. Accordingly he subtracted the amount of the disability payments, $382, from the $1,700 monthly child support payment.

Peggy filed a motion to force Dewayne to pay the full $1,700 without offset. The superior court granted Peggy's motion and ordered Dewayne to pay back support. The Court of Appeals affirmed reasoning that because Dewayne had not included the social security payments to his children in his income he was not entitled to any offset. *In re Marriage of Briscoe*, 82 Wn. App. 529, 536, 919 P.2d 84 (1996). We granted review. 130 Wn.2d 1016, 928 P.2d 412 (1996).

## RCW 26.18.190(2)

■■ The relevant statute, RCW 26.18.190(2), effective on the date of the child support agreement and final decree of dissolution[1] provides in full:

When the social security administration pays social security

---

[1]The statute was revised in 1995 to broaden the statute's coverage to include retired and deceased persons. These changes are not material to our analysis.

disability dependency benefits on behalf of or on account of the child or children of the disabled person, the amount of compensation paid for the children shall be treated for all purposes as if the disabled person paid the compensation toward satisfaction of the disabled person's child support obligation.

The statute is unambiguous: Disability benefits paid directly to the children are in partial satisfaction of the disabled parent's support obligation. *See In re Marriage of Hughes*, 69 Wn. App. 778, 782, 850 P.2d 555 (1993) (when the Legislature enacted RCW 26.18.190 it "specifically provided that such payments *shall* be offset" against the disabled parent's child support obligations). Courts will not alter the plain meaning of statutory language through construction. *State ex rel. T.B. v. CPC Fairfax Hosp.*, 129 Wn.2d 439, 451, 918 P.2d 497 (1996).

### Statutory Law Incorporated

As a general rule parties to a marriage settlement are presumed to contract with reference to existing statutes, and statutes which directly bear upon the subject matter of the settlement are incorporated into and become part of the decree. *Wagner v. Wagner*, 95 Wn.2d 94, 98, 621 P.2d 1279 (1980). The parties, however, may exclude such relevant statutes from their agreement but to do so they must expressly declare their mutual intention to so exclude. *Id.* at 99. An express agreement to exclude the relevant statute must be a "clear manifestation of intent . . . to make the general law inapplicable," *Id.* at 99, and must be " 'directly and distinctly stated or expressed rather than implied or left to inference . . . .' " *In re Marriage of Allen*, 78 Wn. App. 672, 678, 898 P.2d 1390 (1995) (quoting *In re Marriage of Main*, 38 Wn. App. 351, 352, 684 P.2d 1381 (1984)). Failure to exclude results in automatic inclusion. *In re Marriage of Williams*, 115 Wn.2d 202, 209, 796 P.2d 421 (1990).

RCW 26.18.190(2) is therefore incorporated into the child support agreement unless the parties expressed a specific

and manifestly clear intent to exclude its application. But these parties did not.[2] There was certainly no express declaration of intent to exclude the statutory offset otherwise mandated by RCW 26.18.190(2) in the decree or incorporated agreement. Thus the statutory offset contained in RCW 26.18.190(2) applies to the Briscoe child support agreement and forms a part thereof. Accordingly $382 in disability benefits paid to the Briscoe children on Dewayne's behalf must be treated as if Dewayne himself paid said amount "toward satisfaction of [his] child support obligation." RCW 26.18.190(2). So long as Dewayne's children receive $382 in social security disability dependency benefits on his behalf, his $1,700 monthly child support obligation is satisfied by payment of the $1,318 difference.

### Value of Benefits Included as Income

 Relying upon *In re Marriage of Maples*, 78 Wn. App. 696, 899 P.2d 1 (1995), the Court of Appeals concluded Dewayne should have included the amount of disability benefits within his income for purposes of determining his share of child support. *Briscoe*, 82 Wn. App. at 535-36. This is correct. However, we disagree that the proper result is denial of offset. The remedy under *Maples* for failure to include disability payments in one's income is remand for a recalculation of the disabled parent's income and recalculation of child support obligation, 78 Wn. App. at 707, not denial of the lawful entitlement to an offset. However, remand for recalculation is unnecessary in this case since the $1,700 monthly support offered by Dewayne in the child support agreement still exceeds his net support obligation even as modified by the inclusion of the disability payments in his income.

The Court of Appeals is reversed and the matter is

---

[2]On the contrary it appears the parties were aware that the social security benefits would offset. Indeed, prior to finalization of the child support agreement Peggy's attorney wrote to Dewayne in a letter dated November 19, 1993: "I agree with you that we need to take the Social Security disability payments for the children into consideration when calculating the support." Clerk's Papers at 66-67.

remanded for further proceedings consistent with this opinion.[3] Petitioner shall recover his costs on appeal.

DURHAM, C.J., and SMITH, JOHNSON, MADSEN, and ALEXANDER, JJ., concur.

TALMADGE, J. (dissenting) — I dissent. The majority gets only half the picture correct. Dr. Briscoe agreed to a child support payment of $1,700 per month for his two children, but made no mention in his child support worksheets of the social security disability benefits his children received. This failure to include social security disability benefits his children received as income in calculating his child support obligation violates RCW 26.19. Nevertheless, pursuant to RCW 26.18.190(2), the majority affords him an offset against his child support obligation for those very social security disability benefits paid to the children in a proceeding to collect past due child support. This reduction in Dr. Briscoe's child support obligation is unfair under the facts of this case because he waived any right to the credit.

In establishing the child support schedule of RCW 26.19 in 1988, the Legislature indicated the calculation of support must be clearly articulated so that reviewing courts can determine the precise basis upon which a trial court made its child support decision. *Sacco v. Sacco*, 114 Wn.2d 1, 3-4, 784 P.2d 1266 (1990). Each child support order must "state the amount of child support calculated using the standard calculation and the amount of child support actually ordered." RCW 26.19.035(4).

Using a standard child support worksheet, a trial court must first calculate the parents' monthly income pursuant to RCW 26.19.071(1). *State ex rel. Taylor v. Dorsey*, 81 Wn. App. 414, 423-24, 914 P.2d 773 (1996) (prior to assessing child support, the court must first calculate the parents' monthly income). *See also Sacco*, 114 Wn.2d at 3-5. After the combined monthly income of the parents is determined, the basic child support obligation is allocated between the parents based on each parent's share of the combined

---

[3]Credit for overpayments, if any, may be considered on remand. *See In re Marriage of Stern*, 68 Wn. App. 922, 932-33, 846 P.2d 1387 (1993).

monthly income. RCW 26.19.080. The trial court has authority to deviate from the child support schedule when calculating child support obligations as long as the specific reasons for the deviation are set forth in written findings of fact or an order and are supported by evidence. *In re Marriage of Booth*, 114 Wn.2d 772, 777, 791 P.2d 519 (1990). Any deviations from the standard calculation are made after the total income of both parents has been computed.

Consistent with this careful approach to the calculation of child support is the holding of the Court of Appeals in *In re Marriage of Maples*, 78 Wn. App. 696, 899 P.2d 1 (1995). The court there held social security disability benefits paid to the children of a disabled father must be included in the father's income to avoid a windfall; the court articulated the rationale for this view as follows:

> Our interpretation follows and promotes the legislative goals expressed in the statute: provide for adequate support based on economic data; increase the equity of support orders by providing for comparable orders in comparable cases; and, increase voluntary settlements through greater predictability. RCW 26.19.001. Our interpretation furthers the first goal by automatically including the disability payments in the disabled parent's income to determine the standard calculation. It furthers the second goal of providing comparable orders—all children of disabled parents who receive direct disability payments will be similarly treated. Finally, our interpretation furthers the third goal—parties will always know that the disability payments must be factored into the disabled parent's income, instead of wondering whether and by how much a particular judge will follow the standard calculation or order a deviation.

*Maples*, 78 Wn. App. at 704.

In the present case, Dr. Briscoe failed to include the social security disability payments to his children in the calculation of his income as required by *Maples*. Such failure is reversible error. *See Maples*, 78 Wn. App. at 704 (noting both resources [i.e., the social security disability payments to

both the father and the children] should be considered as income to [the father] for purposes of calculating his child support obligation and remanding for recalculation). *See also In re Marriage of Sievers*, 78 Wn. App. 287, 307, 897 P.2d 388 (1995) (rejecting a former husband's complaints that the trial court miscalculated the former wife's income noting such complaints "are greatly weakened by his failure to provide the information required by RCW 26.19.071 as to his own income.").

Notwithstanding this failure on the income side of the ledger, the majority holds Briscoe was entitled to claim the statutory credit for social security disability benefits paid to his children because RCW 26.18.190(2) clearly provides for such an offset. The majority concludes the failure of the parties to include a specific provision in the child support order indicating the credit had been contemplated and waived means the statutory provision is deemed incorporated into the child support order. *See* Majority op. at 348-49 (*citing Wagner v. Wagner*, 95 Wn.2d 94, 621 P.2d 1279 (1980); *In re Marriage of Allen*, 78 Wn. App. 672, 898 P.2d 1390 (1995); *In re Marriage of Williams*, 115 Wn.2d 202, 796 P.2d 421 (1990)). The cases upon which the majority relies, however, do not suggest a party cannot waive a statutory right.

Waiver is an intentional relinquishment of a known right. *Dombrosky v. Farmers Ins. Co.*, 84 Wn. App. 245, 255, 928 P.2d 1127 (1996), *review denied*, 131 Wn.2d 1018, 936 P.2d 417 (1997), noting:

> The doctrine of waiver ordinarily applies to all rights or privileges to which a person is legally entitled. A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. It may result from an express agreement, or be inferred from circumstances indicating an intent to waive. Thus waiver is essentially a matter of intention. Negligence, oversight or thoughtlessness does not create it. The intention to relinquish the right or advantage must be proved, and the burden is on the party claiming waiver.

(Citations omitted.) *Wagner*, 95 Wn.2d at 102, noting:

> Waiver is the intentional relinquishment of a known right. It is necessary that the person against whom waiver is claimed have intended to relinquish the right, advantage, or benefit and his action must be inconsistent with any other intent than to waive it. Further, to constitute a waiver, other than by express agreement, there must be unequivocal acts or conduct evincing an intent to waive. Intent cannot be inferred from doubtful or ambiguous factors.

(Citations omitted.) In this case, the course of the parties conduct below indicates the child support was intended to be $1,700 per month for both children, as negotiated by the parties, and the children were to receive, in addition, the social security disability payments. Dr. Briscoe waived the right to claim the statutory credit.

There are numerous indications in the record supporting the belief the statutory credit was waived by Dr. Briscoe. First, he was fully aware of the social security offset issue early in the case. Dr. Briscoe claimed the social security benefit offset at the time of the entry of the temporary support order in April 1993. He raised the issue with the superior court commissioner and later with the superior court itself in a revision hearing, both times losing on the issue. He was ordered to pay the full temporary child support amount while his children separately received the social security disability benefits to which they were entitled. Second, his former wife's attorney even wrote him regarding a need to address the social security disability benefits issue in the permanent child support order in the context of recalculating child support. *See* Clerk's Papers at 66-67.[4]

Third, in settling the child support issue, Dr. Briscoe

---

[4]The majority quotes selectively from counsel's November 19, 1993 letter to Dr. Briscoe. It is plain from the letter, read in full, that Mrs. Briscoe's attorney was not simply agreeing with Dr. Briscoe's conclusions about those benefits. Rather, he was placing the issue in the context of the complete negotiations between the parties:

> The questions concerning child support and parenting should be addressed in a further meeting with you, Peggy and myself. We need to re-compute child support based on the Washington State Worksheets. I agree with you that we need to take the Social Security disability payments for the children into

himself prepared the child support worksheets. He agreed to child support of $1,700 per month for the two children, a figure in excess of the standard calculation, stating:

> Father willing to deviate (exceed) from Washington State child support table to facilitate settlement.

> Father will assume one thousand seven hundred dollars ($1,700) per month for child support obligation.

Clerk's Papers at 64. *No* mention is made of a statutory offset or credit in the papers Dr. Briscoe prepared. Ordinarily, we construe ambiguities in a document against its drafter. *See, e.g., Lynott v. National Union Fire Ins. Co.,* 123 Wn.2d 678, 690, 871 P.2d 146 (1994); *Berg v. Hudesman,* 115 Wn.2d 657, 677, 801 P.2d 222 (1990).

Finally, Dr. Briscoe did not appeal from the decree and the parenting order, thus forfeiting the opportunity to challenge their silence on the statutory offset for social security disability benefits paid to the children. The failure to appeal rendered those orders final as to the parties' rights and obligations. *See Walsh v. Wolff,* 32 Wn.2d 285, 287, 201 P.2d 215 (1949) (doctrine of res judicata rests upon the ground that a matter which has been litigated, or on which there has been an opportunity to litigate, in a former action in a court of competent jurisdiction, should not be permitted to be litigated again). *Cf. In re Marriage of Mudgett,* 41 Wn. App. 337, 342, 704 P.2d 169 (1985) (noting collateral estoppel prevents the relitigation of an issue or determinative fact after the party estopped has had a full and fair opportunity to present his or her case, even if the second litigation of issues is presented in a different claim or cause of action, and holding former husband could not challenge terms of dissolution decree in subsequent action

consideration when calculating the support. The only way we could agree on child support would be to run out the worksheets completely. We also need to make provisions for health and life insurance. The whole issue of support is too complex to draft something preliminary and hope that it would be agreed upon. It we move fast enough, we should be able to meet sometime during the last week in November through the first part of December to finalize everything.

Clerk's Papers at 66-67.

where he failed to contest terms entered previously by the court).

Despite his full awareness of the social security disability benefits issue, and having litigated the issue before the superior court commissioner and the superior court in a revision hearing, Dr. Briscoe did not seek a specific provision in the permanent child support order regarding the social security disability benefit offset pursuant to RCW 26.18.190(2). In fact, for a period of five months after the entry of the permanent child support order, Briscoe actually paid the full $1,700 per month and the children additionally received social security disability benefits. Such payments act as both an acknowledgment of the terms of the settlement agreement and a waiver by Dr. Briscoe of any entitlement to the statutory social security disability benefit offset allowed by RCW 26.18.190(2). It was only when he chose a self-help remedy, reducing his child support obligation by the amount of the social security disability benefits received by the children, provoking his ex-wife to bring the present action for back child support, that Dr. Briscoe again raised the issue of his entitlement to the statutory social security disability benefit credit.

In light of his failure to include all of his children's social security disability benefits received as part of his monthly income for purposes of the calculation of child support, and his waiver of any entitlement to a statutory offset for social security disability benefits paid to the children, I would affirm the trial court decision on Dr. Briscoe's child support debt.[5]

---

[5]An alternative disposition might be to remand the case to the trial court for a recalculation of Dr. Briscoe's child support obligation, allowing him to properly include the children's receipt of social security disability benefits as part of his income and to allow him to claim the credit permitted by RCW 26.18.190(2). *See, e.g., Maples*, 78 Wn. App. at 705-07 (remanding for recomputation of child support where social security disability payments to children were not included in father's income for purposes of calculating the standard child support obligation).

It is noteworthy Dr. Briscoe averred below that his only income was disability benefits payments except: 1991 Father's income; non-recurring, one-time:

1. Pension distribution;

DOLLIVER and GUY, JJ., concur with TALMADGE, J.

After modification, further reconsideration denied March 25, 1998.

2. Two disability insurance policies — term expired 1991.

Clerk's Papers at 64. Mrs. Briscoe asserts, without dispute by Dr. Briscoe, that he may have income from a shopping mall in Issaquah and an inheritance. These assets and their attendant income would be before the trial court for purposes of recalculating Dr. Briscoe's income in establishing his child support obligation afresh.